UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
                                                           :
HAGGAR INTERNATIONAL CORPORATION,                          :    03-CV-5789 (ARR) (CLP)
*doing business as* MONTANA FOOD INDUSTRIES,               :
                                                           :    <u>NOT FOR PRINT OR</u>
                    Plaintiff,                             :    <u>ELECTRONIC</u>
                                                           :    <u>PUBLICATION</u>
       -against-                                           :
                                                           :    <u>OPINION & ORDER</u>
UNITED COMPANY FOR FOOD INDUSTRY                           :
CORPORATION, et al.,                                       :
                                                           :
                    Defendants.                            :
-------------------------------------------------------------------- X

ROSS, United States District Judge:

On September 22, 2010, Magistrate Judge Cheryl L. Pollak issued a Report and Recommendation (the "R&R") in this trademark infringement action, recommending that summary judgment be denied on the issue of fraud. On October 6, 2009, defendants timely filed objections to the R&R pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure. Having reviewed de novo those parts of the R&R to which defendants have objected, this court now accepts Judge Pollak's recommendations and denies summary judgment.

## I. BACKGROUND

**A.     Procedural History**

Plaintiff Haggar International Corporation d/b/a MONTANA Food Industries ("Haggar"), a California corporation in the business of selling or distributing packaged Middle-Eastern vegetables bearing the trademark "MONTANA," commenced this action in November 2003. It alleges that an Egyptian food exporter, United Company for Food Industry Corporation ("United"), its U.S. subsidiary United Company for Food Industry, (USA) Corp., and a Brooklyn-based importer, Trans Mid-East Shipping and Trading Agency, Inc. (collectively,

1

"defendants") have violated the Lanham Act and New York State law by using Haggar's MONTANA mark on their own vegetables. Defendants counterclaimed, alleging that United—not Haggar—is the owner of the trademark at issue, having created the mark in Egypt and used the mark on its exports throughout the world, including the United States.

In December 2006, Haggar moved for summary judgment on defendants' counterclaims, arguing that United had unreasonably delayed enforcing whatever rights it had in the MONTANA mark and that defendants' counterclaims were therefore barred by the equitable doctrines of laches and acquiescence. On referral from this court, Judge Pollak issued a Report and Recommendation dated March 11, 2008, recommending denial of Haggar's motion for summary judgment on defendants' counterclaims because there was a genuine issue of fact with respect to whether Haggar had fraudulently procured registration of the MONTANA marks, since a party asserting the equitable defenses of laches and acquiescence must come into court with clean hands. In an opinion and order dated June 4, 2008, this court adopted Judge Pollak's March 2008 Report and Recommendation and denied summary judgment for Haggar on defendants' counterclaims.

**B.     The Current R&R on the Issue of Fraud**

In April 2009, defendants moved for summary judgment that Haggar had fraudulently procured registration of the MONTANA marks. In relevant part and as set forth more fully in Judge Pollak's R&R on this motion, familiarity with which is presumed, defendants claimed that Haggar committed fraud on the United States Patent and Trademark Office ("PTO") by asserting that it owned the MONTANA trademark when it knew that United was the true owner of the mark.

Key to defendants' argument is their claim that Haggar was United's exclusive distributor

in the United States.  "[A]s between a foreign manufacturer and its exclusive United States distributor, the foreign manufacturer is presumed to be the owner of the mark unless an agreement between them provides otherwise."  Ushodaya Enters., Ltd. v. V.R.S. Int'l, Inc., 63 F. Supp. 2d 329, 336 (S.D.N.Y. 1999).  "A distributor . . . does not acquire a right of ownership in the manufacturer's or producer's mark merely because it moves the goods in trade."  Patent and Trademark Office, Trademark Manual of Examining Procedure (TMEP), § 1201.06(a) (5th ed. 2007); but cf. Tactica Int'l, Inc. v. Atlantic Horizon Int'l, Inc., 154 F. Supp. 2d 586, 600 (S.D.N.Y. 2001) (presumption of trademark ownership in foreign manufacturer may be rebutted where distributor "gives them the benefit" of its name or business style).

Defendants claim that United registered trademarks featuring the word "MONTANA" in Egypt in 1986.  During that same year it allegedly granted distribution rights for its MONTANA products to Mr. Alfi al Masri and began shipping directly to Mr. Sherif Boulos, Mr. al Masri's son-in-law in the United States, and the incorporator and president of Haggar.  According to defendants, Mr. Boulos entered into an oral agreement with United for Haggar to become the exclusive United States distributor for United foods bearing the MONTANA mark.  They further allege that the agreement did not include the right to use the mark, and that the goods shipped to Haggar were not specially manufactured for Haggar.

Haggar disagrees with defendants' account of its business relationship with United.  According to Haggar, no distributorship agreement was ever formed.  Rather, Haggar contends that Mr. al Masri placed specific orders for goods from United and, upon paying for them, handled all details of exporting the goods to customers of his choice.  In Haggar's version of events, Mr. Boulos worked only with Mr. al Masri, never directly with United, and sold only products purchased by him in full.

All parties agree that whatever business relationship Haggar had with Mr. al Masri or United was terminated in the summer of 1989. It is also undisputed that, also in 1989, Haggar filed an application with the United States Patent and Trademark Office ("PTO"), its second such application, which resulted in the successful registration of the MONTANA trademark. As part of that application, Mr. Boulos signed an oath asserting that he believed Haggar to be the owner of the MONTANA trademark and that, to the best of his knowledge, no other entity had the right to use the mark in commerce.

On referral from this court, Judge Pollak recommended that summary judgment on the issue of fraud be denied because she found, in relevant part, that a reasonable trier of fact could conclude that Mr. Boulos did not knowingly make a false statement to the PTO in his 1989 oath. First, while there was "much evidence" to support an inference that there was an oral agreement between United and Boulos which resulted in an exclusive distributorship, evidence to the contrary was also presented, including the testimony of Ms. Hala Boulos, widow of the late Mr. Boulos. R&R at 24. Second, Judge Pollak noted Haggar's contention that United's export license contained the word "MOON TANA," not "MONTANA," and observed, "If a jury believes that the mark used by United was actually "MOON TANA," there were significant differences between the word marks and the pictorial marks used by United and Haggar, such that an inference could be drawn that Mr. Boulos made the representations to the PTO with the honest belief that they were true." Id. at 25. Third, Judge Pollak found that a jury might reasonably question why United, if it was the rightful owner, never registered its mark in the United States and indeed withdrew an application in 1990 and chose not to challenge Haggar's registration. Id. at 26.

Finally, Judge Pollak noted that, even if it were clearly established that Haggar was

United's distributor, a jury might still find that it had not committed fraud on the PTO because an applicant is not required "to disclose those persons whom he may have heard are using the mark if he feels that the rights of such others are not superior to his. Thus, an applicant who has at least "color of title" to the mark is not guilty of fraud . . . ." Id. (quoting Yocum v. Covington, 216 U.S.P.Q. 210, 216-27 (T.T.A.B. 1982)). Haggar would have had color of title if it "reasonably believed that it could rebut the presumption that the foreign manufacturer was the trademark owner if it believed it had given the mark the 'benefit of its reputation or of its name' through sales in the United States." Id. at 26 (citing Tactica Int'l, Inc., 154 F. Supp. 2d at 600).

"Given that alternative reasonable conclusions may be drawn from the established facts here," Judge Pollak wrote, "summary judgment is not appropriate at this time." Id. at 27-28.

**C.    Defendants' Objections to the R&R**

Defendants' six enumerated objections to the R&R, fall into four categories. First and foremost, defendants assert that Judge Pollak erred in concluding that genuine issues of fact existed as to whether Haggar acted as the distributor of United's MONTANA products in the United States. See Defendants' Objection to Magistrate Judge's Report and Recommendation on Defendants' Motion for Summary Judgment on the Issue of Fraud ("Def. Obj.") at 17-18. Specifically, defendants argue that Judge Pollak (a) improperly relied on Haggar's denials, id. at 7-10, and (b) relied on the incorrect conclusion that no money or merchandise changed hands between Haggar and United, id. at 13-14. Second, defendants assert that Judge Pollak relied on a red-herring—Haggar's allegedly incorrect and irrelevant argument that United used the mark MOON TANA, not MONTANA. Id. at 11-13. Third, defendants assert that Judge Pollak made impermissible use of United's failure to register the mark in the United States. Id. at 18-19. Fourth and finally, defendants assert that Judge Pollak improperly conjectured sua sponte that

5

Haggar could reasonably have believed it gave the benefit of its name to the MONTANA brand. Id. at 14-17.

## II. DISCUSSION

### A. Standard of Review

Contrary to defendants' apparent concession, id. at 3, its objections are subject to de novo review under the Federal Magistrates Act. See 28 U.S.C. § 636(b)(1) (prescribing report and recommendation procedure for motions that a magistrate may not decide without consent, including motions for summary judgment); see also Fed. R. Civ. P. 72(b). Upon such review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." § 636(b)(1). This court has therefore conducted a de novo review of those portions of the R&R addressed in defendants' objections; after careful consideration, the court agrees with Judge Pollak that genuine issues of material fact precluded summary judgment for defendants on the issue of fraud. Because this court concludes that a reasonable trier of fact could find that there was insufficient evidence to establish a distributorship relationship between Haggar and United, see R&R at 26, it need not consider defendants' other objections.

### B. The Issue of Whether There Was a Distributorship Relationship

Defendants object to Judge Pollak's conclusion that "the Court cannot definitely decide the nature of the parties' relationship." Def. Obj. at 17 (citing R&R at 27). According to defendants, "all contemporaneous evidence illustrate [sic] that both parties, United and Haggar, had a clear understanding that Haggar was only a distributor for United's MONTANA products." Id. at 5. Defendants' enumeration of the evidence in their favor includes, inter alia, a 1986 invoice from United to Boulos; a collection of bills of lading dating from 1986 to 1988 for

shipments of MONTANA products directly from United to Mr. Boulos; a series of letters from Mr. Boulos and his attorney Alan Mund stating that Haggar was a distributer of United's MONTANA line of products, including a written request for United to assign its mark to Haggar; and an authorization from United appointing Mr. Boulos as United's sole agent in the United States for MONTANA products and authorizing Mr. Boulos to file documents to protect United's mark. See id. at 5-7.

Defendants observe that "[t]he only evidence to the contrary is in the form of only testimony denying the manufacturer-distributor relationship between United and Haggar, in depositions of Mr. Boulos and his wife, Hala, who admitted she was not involved in the day to day activities of Haggar at the time of the agreement between United and Haggar." Id. at 7. It is the deposition testimony of Ms. Boulos that when her husband sold United's produce, he dealt only with her father, Alfi al Masri, and never directly with United. Specifically, she testified that Mr. Boulos never received shipments from United nor remitted payments to United. According to Ms. Boulos, her father simply bought produce of his choice from United and resold it to whomever he pleased, including to Mr. Boulos to sell in the United States. Because the party opposing summary judgment may not rest upon mere conclusory allegations or denials, but must set forth concrete particulars that a trial is needed, R.G. Group Inc. v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir. 1984), defendants argue that Judge Pollak erred in relying on Ms. Boulos self-interested oral testimony, instead of relying on the contemporaneous documentary evidence. Def. Obj. at 9-10.

On a motion for summary judgment, however, the function of the court is not to resolve disputed issues, but to determine whether there is a genuine issue to be tried. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether such genuine issues of

7

material fact exist, "the court is required to draw all factual inferences in favor of the party against whom summary judgment is sought." Balderman v. U.S. Veterans Admin., 870 F.2d 57, 60 (2d Cir. 1989); Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003). "[T]he court should not weigh evidence or assess the credibility of witnesses. These determinations are within the sole province of the jury." Hayes v. New York City Dept. of Corrections, 84 F.3d 614, 619 (2d Cir. 1996) (internal citations omitted); see also Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir. 1992) (summary judgment appropriate "[o]nly when no reasonable trier of fact could find in favor of the nonmoving party.").

Applying this standard, the court finds that Ms. Boulos' testimony provides concrete particulars from which a reasonable trier of fact could find that there was no distributorship relationship between Haggar and United. Defendants observe that there is no documentary evidence against the existence of a distributor relationship, Def. Obj. at 7, but there is also no conclusive evidence of actual shipments or payments to substantiate the invoice and bills of lading upon which they rely. See Def. Obj. at 13-14, R&R at 24 n.24; Transcript of Hearing before Judge Pollak, July 1, 2009 ("Hearing Trans.") at 45. It is Ms. Boulos' testimony and Haggar's position that no shipment was received or paid for. Hearing Trans. at 27. This court agrees with Judge Pollak that, if no merchandise or money were exchanged between the two companies, it would be unclear how Haggar could have been the distributor for United of MONTANA products in the United States. See R&R at 26. Finally, the court rejects defendants' alternative argument that Haggar was necessarily its distributor even if all the goods went through Mr. al Masri. See Def. Obj. at 10, 18. This argument is unavailing because a reasonable trier of fact could credit Ms. Boulos' testimony that Mr. al Masri exercised control over the goods after he purchased them, making Haggar perhaps his distributor but not United's.

Drawing all inferences in favor of Haggar and refraining from weighing the evidence, this court agrees with Judge Pollak that a genuine issue of material fact exists with respect to whether Haggar was United's distributor in the United States. Summary judgment is therefore inappropriate, and the court need not consider defendants' other objections, which address additional and independent grounds for Judge Pollak's recommendation.

**C.      Haggar's Opposition**

In Haggar's response to defendants' objections to the R&R, it argues that denial of summary judgment in favor of defendants on the issue of fraud necessarily entails its own entitlement to summary judgment on this issue. See Plaintiff's Response in Opposition to Defendants' Objection to Magistrate Judge's Report and Recommendation on Defendants' Motion for Summary Judgment on the Issue of Fraud ("Pl. Opp.") at 9 (citing In re Bose Corporation, 580 F.3d 1240 (Fed. Cir. 2009)). Haggar's syllogism goes as follows: (1) In denying summary judgment to defendants, the court necessarily holds that there is room for a reasonable trier of fact to find in Haggar's favor on the issue of fraud. (2) Fraud on the PTO must be proven by "clear and convincing evidence," and "[t]here is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party." In re Bose Corp. 580 F.3d at 1243 (quoting Smith Int'l, Inc. v. Olin Corp., 209 USPQ 1033, 1044 (T.T.A.B. 1981)). (3) Therefore, no reasonable trier of fact applying this standard and resolving all doubts in Haggar's favor could find that Haggar had committed fraud on the PTO; therefore, summary judgment must be entered for Haggar.

This argument is clever but unavailing. In re Bose Corp. does not set the standard for proving fraud on the PTO equal to the summary judgment standard. It stands only for the proposition that a subjective intent to deceive, not mere negligence, is required to establish fraud

9

on the PTO.  Id. at 1244.  Indeed, notwithstanding Haggar's quoted language, the Federal Circuit expressly recognized that culpable "intent must often be inferred from the circumstances and related statement made."  Id. (citation omitted).  A reasonable trier of fact could conclude Haggar lacked intent to deceive the PTO, but it could also reach the opposite conclusion.

### III.  CONCLUSION

For the reasons set forth above, this court finds that defendants' objections lack merit, and it accepts the recommendations set forth in Judge Pollak's Report and Recommendation dated September 22, 2010.  Accordingly, defendants' motion for summary judgment on the issue of fraud is denied.

SO ORDERED.

/s/ ARR  
Allyne R. Ross  
United States District Judge

Dated: January 5, 2011  
Brooklyn, New York